# UNITED STATES DISTRICT COURT
for the
District of Nebraska

| | |
|---|---|
| United States of America<br>v.<br><br>CODY A. CAPE<br><br>*Defendant(s)* | )<br>)<br>)   Case No.   8:20MJ 633<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   November 1 - December 25, 2020   in the county of   Washington   in the
_____ District of   Nebraska   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 115(a)(1)(B) & (b)(4) | Threatening to Murder a Federal Law Enforcement Officer |
| 18 USC 1201(a)(1) | Interstate Kidnapping |
| 18 USC 924(c)(1)(A)(ii) | Brandishing a Firearm During and in Relation to a Crime of Violence |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Jonathan Robitaille, Special Agent FBI
*Printed name and title*

☐ Sworn to before me and signed in my presence.
☑ Sworn to before me by telephone or other reliable electronic means.

Date: 12-27-20

*Judge's signature*

City and state:   Omaha, Nebraska

Susan M. Bazis, United States Magistrate Judge
*Printed name and title*

I, Jonathan Robitaille, being first duly appointed, state and depose as follows:

## INTRODUCTION

1. I am a sworn and commissioned Special Agent with the Federal Bureau of Investigation. I have been a Special Agent for approximately 24 years. During that time I have conducted numerous criminal investigations and have served warrants and arrests. I have conducted multiple investigations involving threats against federal officials and kidnappings. I graduated from the Federal Bureau of Investigation Training Academy located in Quantico, VA in October, 1996.

2. The statements contained in this affidavit are based on my personal knowledge as well as on information provided to me by other law enforcement officers. This affidavit is being submitted for the limited purpose of securing a criminal complaint and an arrest warrant, and I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that CODY A. CAPE committed the crimes of Threatening to Murder a Federal Law Enforcement Officer in violation of 18 U.S.C. § 115(a)(1)(B) & (b)(4); Interstate Kidnapping in violation of 18 U.S.C. § 1201(a)(1); and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. 924(c)(1)(A)(ii).

## BACKGROUND OF INVESTIGATION AND
## FACTS ESTABLISHING PROBABLE CAUSE

3. Victim 1 is a commissioned Federal Wildlife Officer, Series 1801, with the U.S. Fish and Wildlife Service (USFWS). Victim 1 has been a commissioned federal law enforcement officer since 2009 to present and is assigned to patrol the Boyers Chute National Wildlife Refuge and Desoto National Wildlife Refuge.

4. In October 2020 Victim 1 was working with law enforcement officers commissioned with the Iowa Department of Natural Resources (IDNR) and the Nebraska Game and Parks (NGP). Victim 1 and the state officers did contact Cape and his friend identified as Victim 2. Cape was fishing on the Missouri River near the DeSoto National Wildlife Refuge. Victim 2 was hunting deer nearby. All officers were wearing their official uniforms. During this contact, Cape was issued a citation by the IDNR officer for a fishing violation. Victim 2 was issued citations by both the IDNR and NGP officers for hunting violations.

5. In late November 2020 Victim 1 along with law enforcement officers commissioned with the (NGP) did investigate Cape for his alleged involvement in multiple deer poaching incidents. These incidents allegedly occurred within the states of Iowa and Nebraska near the DeSoto National Wildlife Refuge. Due to the alleged transportation of illegally taken wildlife between multiple states and a federal wildlife refuge, Victim 1 was investigating possible violations of the Lacey Act of 1900. During this investigation, Cape's cell phone was seized as evidence under a Nebraska state court order. Victim 1 was wearing his official government uniform during this investigation and operating his official marked patrol truck.

6. As a result of this joint federal and state poaching investigation, Cape and Victim 2 are facing potential prosecution. This includes the possibility of issuance of fines, loss of hunting privileges, and potential incarceration for offenses committed.

7. On December 25th, 2020 at approximately 12:51 AM, the Blair, NE Police Department (BPD) received a phone call from Victim 2 who reported a possible planned attack against a Federal Wildlife Officer who resided in Blair, NE. Law enforcement officers with the BPD were immediately dispatched to meet with Victim 2 and investigate the reported allegation. Upon meeting with officers, Victim 2 stated that he had picked up Cape at his

residence in Blair, NE with the intent to hang out and drive around. Victim 2 informed officers that Cape told him to drive by the known residence of Victim 1 in Blair, NE. Victim 2 stated that upon driving by Victim 1's residence, Cape rolled his window down, displayed a middle finger gesture and yelled, "Fuck you" toward Victim 1's house. Victim 2 told officers that Cape had bragged about surveilling Victim 1's residence for one or two weeks.

8. Victim 2 informed BPD officers that he then drove Cape to an unknown residence located in Omaha, NE to retrieve firearms owned by Cape. Victim 2 stated that upon retrieving the firearms, he and Cape returned to the Blair area.

9. Victim 2 stated to BPD officers that Cape laid a .45 caliber handgun on his lap and forced Victim 2 drive to the DeSoto National Wildlife Refuge. Victim 2 stated to officers that he feared for his life and contemplated drawing his lawfully concealed firearm to protect himself, but doubted his success in doing so given Cape's handgun was on Cape's lap and pointing at Victim 2.

10. Victim 2 stated to BPD officers that he drove Cape into Iowa and into the government staff housing unit on the DeSoto National Wildlife Refuge. Victim 2 told BPD officers that Cape wanted to see whether or not Victim 1 was present at one of the residences within the housing unit. Victim 2 stated to officers that upon not observing Victim 1's truck, he was told by Cape to leave the housing unit and return to Blair, NE.

11. Victim 2 told officers that while driving back to Blair, NE Cape began discussing ways in which he planned to murder Victim 1. Victim 2 told officers that Cape stated he could access explosives such as C4, TNT, and dynamite from ex-military members. Victim 2 told officers that Cape made comments about wiring explosives to Victim 1's truck and throwing dynamite into the windows of Victim 1's residence with the purpose of killing him and his

3

family members. Victim 2 told officers that Cape mentioned using suicide by cop against Victim 1, because he did not want to go to jail again. Victim 2 told officers that Cape stated he sleeps with a loaded gun. Upon returning to Blair, NE he dropped Cape off at Cape's residence. Victim 2 told officers that Cape took his firearms with him into his house.

12. Victim 2 completed a signed statement to the BPD officers outlining the incident. BPD in turn immediately contacted Victim 1 at his personal residence to warn him of the alleged threats to his life. Victim 1 notified his chain of command of the alleged threats.

13. Due to the severity of the alleged threats posed by Cape to Victim 1 and other law enforcement officials, the BPD conducted surveillance of Cape's residence to better determine his whereabouts.

14. On December 25th, 2020 at approximately 8:00 PM, an officer with BPD observed Cape and an unknown female exit his residence. The officer reported that Cape had observed him sitting in his marked patrol squad approximately one block away and took a photograph of him. The officer reported that Cape and the female entered a 2016 Volkswagen Jetta with Cape sitting in the driver's seat. The officer reported that Cape immediately pulled into a driveway near his residence and turned the vehicle around and drove toward his patrol car. The officer reported mobilizing his patrol car and began driving toward Cape's vehicle. The officer reported that he then followed Cape as he drove away from the area and observed Cape driving erratically and in an elusive manner making several turns. A short time later BPD officers conducted a felony traffic stop and arrested Cape for false imprisonment and use of a deadly weapon to commit a felony. The female passenger was detained and identified as Witness 1. Witness 1 was ultimately released at the scene.

15. Upon an inventory search of the vehicle per BPD policy, a Ruger Blackhawk .45 caliber revolver (SN 46-53065) was discovered unloaded in the glove compartment. Furthermore, six .45 caliber bullets were located in the center console of the vehicle. The firearm and bullets were seized by the BPD as evidence in the investigation.

16. On December 26th, 2020, the complainant and USFWS Federal Wildlife Patrol Captain Carl Lantz interviewed Witness 1. During the interview, Witness 1 stated that she was a passenger in Cape's vehicle on the evening of December 25th. Witness 1 stated that the BPD conducted a traffic stop of Cape's vehicle. Witness 1 stated that prior to the stop a BPD patrol vehicle was following them. Witness 1 stated that Cape had a loaded handgun located next to the manual stick shift. Witness 1 stated that Cape picked the gun up, unloaded it, and placed the gun into the glove compartment prior to being pulled over. Witness 1 stated that in recent past Cape has told her that he wanted to kill the game warden who has been investigating him. Witness 1 stated that Cape knew where the game warden lived in Blair, NE and had discovered the game warden's residential address while driving in the area when picking up take-out food. Witness 1 stated that Cape planned to shoot the game warden at the game warden's residence. Witness 1 believed that Cape was serious about his intentions to kill the game warden.

17. On December 26th, 2020, Federal Wildlife Patrol Captain Carl Lantz interviewed Witness 2, the mother of Victim 2. Witness 2 stated that her son, Victim 2, was a friend of Cape. Witness 2 stated that in November 2020 she was part of a conversation between Cape and Victim 2. During this conversation, Witness 2 stated that she heard Cape say that he wasn't happy with Victim 1 and that he wanted to make explosives and kill him. Witness 2 stated that Cape was serious about his intentions to kill Victim 1.

18. On December 26th, 2020 the complainant and Federal Wildlife Patrol Captain Geoff Donaldson interviewed Victim 2. Victim 2 corroborated the information he provided to BPD officers on the early morning of December 25th, 2020 and detailed in this complaint. Victim 2 provided greater detail and elaboration to the specifics of Cape's plan of using explosives to kill Victim 1 at his personal residence in Blair, NE. In particular, he stated that Cape wanted to wire C4 explosives to the ignition system of Victim 1's patrol vehicle for purposes of killing Victim 1 as he attempted to start his vehicle. Victim 2 stated that Cape made comments about throwing dynamite or a hand grenade into Victim 1's residence's window for purposes of killing him. Victim 2 stated that Cape was a licensed electrician.

19. Victim 2 stated that Cape told him that he knew where Victim 1 lived in Blair, NE because he had observed Victim 1's patrol truck parked at his residence. Victim 2 stated that Cape told him that he'd discovered the location of Victim 1's residence while he was driving to pick up Chinese take-out food. Victim 2 stated that Cape told him that upon discovering Victim 1's residence, he (Cape), on multiple occasions, used a nearby church parking lot to monitor the residence.

20. Victim 2 provided additional details regarding why he felt his personal life and safety was in danger on the evening of December 24th, 2020, when he was forced by Cape to drive across state lines from Nebraska into Iowa to the Desoto National Wildlife Refuge in search of Victim 1. Victim 2 stated that on this evening Cape retrieved a .45 caliber revolver from the vehicle's passenger door compartment and laid the revolver on Cape's lap. Victim 2 stated that the revolver's barrel was pointed at him as he drove the vehicle. Victim 2 stated that Cape demanded him with a firm command to drive to the refuge housing unit despite his objections. Specifically, Victim 2 stated "I told Cody I didn't really want to go, but Cody put

his hand on his pistol and said, we're going". Victim 2 stated that he feared for his life and felt he was unable to resist Cape's demands. Victim 2 reiterated that he feared for his life and contemplated drawing his lawfully concealed firearm to protect himself, but doubted his success in doing so given Cape's handgun was on Cape's lap and pointing at Victim 2.

21. On December 26th, 2020, the complainant and USFWS Federal Wildlife Patrol Captain Carl Lantz interviewed the defendant Cody A. Cape. This interview was conducted at the Washington County Sheriff's Office jail in Bair, NE after being advised of and waiving his Miranda rights. During this interview, Cape acknowledged that he is the subject of a poaching investigation that is being conducted by a game warden identified as "that [Victim 1's first name] guy". Cape stated that he was very "stressed as hell" over this investigation. Cape admitted that he drove with Victim 2 to the refuge but with no real purpose. Cape denied that he had kidnapped anyone that night. Cape did admit to driving past the game warden's residence that evening and gesturing with a middle finger at the residence. When asked if people would believe that his statements would mean that he wanted to kill the game warden, Cape replied that "it's possible, I'm a very believable person". Asked again if he might have made statements that he wanted to kill the game warden, Cape replied, "probably". Cape continued by stating, "I don't even know where the fuck I'd get that shit". When asked to clarify what explosives he meant when talking to others, Cape replied, "C4". Cape stated that he would not actually hurt the game warden. Cape stated that he did own a Mosin rifle and a revolver. Cape stated that he had both of these firearms with him the night of December 24th. Cape eventually invoked his rights during this interview and all questioning stopped and the interview was terminated.

## CONCLUSION

22.   Based on the foregoing, I submit that there is probable cause to believe that CODY A. CAPE did commit the following crimes of Threatening to Murder a Federal Law Enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) & (b)(4); Interstate Kidnapping in violation of 18 U.S.C. § 1201(a)(1); and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. 924(c)(1)(A)(ii). Affiant states that all statements contained in this affidavit are true and correct to the best of his knowledge.

Dated the 27th day of December, 2020.  Further this affiant sayeth naught.

Jonathan Robitaille
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this

__27__ day of December, 2020, at Omaha, Nebraska.

Susan M. Bazis
United States Magistrate Judge

8