IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CODY A. CAPE,<br><br>Defendant. | 8:21CR11<br><br>FINDINGS AND RECOMMENDATION |

This matter is before the Court on the Motion to Suppress Statement (Filing No. 38) filed by Defendant, Cody A. Cape. Defendant seeks to suppress statements he made to law enforcement on December 26, 2020, during a custodial interview. Defendant filed a brief (Filing No. 39) in support of the motion and the government filed a brief (Filing No. 43) opposing the motion.

The Court held an evidentiary hearing on July 7, 2021. Defendant was present with his attorney, Stuart Dornan. The government was represented by Assistant United States Attorney, Sean Lynch. Special Agent Jonathon Robitaille (SA Robitaille)[1] of the Federal Bureau of Investigation testified on behalf of the government. The government offered Exhibit 1, the audio-visual recording of the custodial interview at issue, which was received by the Court without objection. A transcript (TR.) of the evidentiary hearing was prepared and filed on August 5, 2021. (Filing No. 57). The matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

On January 21, 2021, a grand jury charged Defendant in a three-count indictment with (1) threatening to murder a federal wildlife officer, in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4) (Count I), (2) interstate kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Count II), and (3) brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Count III). The charges relate to conduct that allegedly took place between November 1 and December 25, 2020. (Filing No. 22).

---

[1] SA Robitaille is assigned as a special agent to the violent crime squad investigating violent crimes under federal statute such as extortions, kidnappings, threats against federal agents, and bank robberies. (TR. 8).

On December 25, 2020, Defendant was arrested on state charges. The following day, SA Robitaille, accompanied by U.S. Fish and Wildlife Officer Carl Lantz, interviewed Defendant at the Washington County jail. (TR 10). Officer Lantz's body-worn camera audio-visually recorded the interview. (TR 10-11; Ex. 1). The court took judicial notice of a transcript (Filing No. 53) prepared of the interview (IT.) (TR. 75).

SA Robitaille and Officer Lantz began the interview by introducing themselves and telling Defendant, who was handcuffed, that he was "obviously" under arrest and that they wanted to talk to him. Defendant replied he was arrested "on bullshit" and "did not kidnap somebody." (IT. 2; TR. 12). SA Robitaille stopped Defendant and stated, "before we . . . get into what this is all about . . . I need you to understand your rights, and if you understand them, you want to waive them, then we can start talking about it." (IT. 3). SA Robitaille stated he was going to fill out a *Miranda* rights advisement form for Defendant to sign. Defendant replied, "If you're doing that, then I might as well get my lawyer. Or get a lawyer." (IT. 4). SA Robitaille responded, "That is up to you," and continued to provide Defendant with a full *Miranda* advisement. (IT. 4-5).

At the conclusion of the rights advisement, SA Robitaille asked Defendant if he would like to answer questions without a lawyer present; Defendant asked, "Can you get one—get a lawyer here today?" SA Robitaille replied, "I can't get a lawyer here today. Obviously, we wouldn't question you today, but I can't get you a lawyer today. But there would be no questioning today either." (IT. 6). Defendant then asked SA Robitaille what the charges against him were, and SA Robitaille replied there were state and federal charges. Defendant asked about the federal charges; SA Robitaille replied, "I'm not going to get into this with you because if I say something, you might say something back. . ." Defendant interrupted Sgt. Robitaille to say he "didn't kidnap nobody or whatever the hell I'm here for." SA Robitaille stated he could explain things further but could not talk to Defendant until he waived his rights. (IT. 6-7). Defendant stated he would "listen." SA Robitaille replied, "You'll listen? And when you sign your . . . your name there [on the rights advisory form], you're waiving your rights. Do you understand that? You can listen. Like I say, you don't have to answer any questions." In response, three times in quick succession Defendant told Sgt. Robitaille to "get a lawyer." Defendant concluded with, "You want me to waive my rights and sign my life away . . . get a fucking lawyer." (IT. 7-8). SA Robitaille replied, "Alright" and told Defendant he would be taken back to his cell. (IT. 8). Defendant then again asked what he was being charged with "before I go anywhere." SA Robitaille replied, "Alright.

2

I'm not asking you a question, but I'm just going to answer your question, okay?" Defendant replied he understood. SA Robitaille listed the state charges against Defendant (one of which was false imprisonment) and then stated, "We would have liked to have heard your side of the story because we're looking at federal charges, too. Okay?" Defendant then replied, "Yep. I don't need a fucking lawyer." SA Robitaille asked, "You don't need a lawyer?" Defendant then gestured for a pen and signed the rights advisory form. (IT. 8-9; Ex. 1 at 6:45-6:53). After signing, Defendant asked, "So if I may ask, who did I falsely imprison?" (IT. 9). SA Robitaille then conducted an interview with Defendant regarding the circumstances underlying the charges against him. After about fifteen minutes, Defendant stated, "Get me my lawyer." SA Robitaille replied, "You want a lawyer. Okay. We respect that—" Defendant interrupted SA Robitaille and began speaking again about the investigation. SA Robitaille stopped Defendant, stating, "Hey, you don't have to say anything further. Okay? The interview is over . . . Now, you've asked for your attorney, and we're gonna respect that. Okay?" Defendant stated, "Still, for the record, I ain't trying to hurt the guy" and the interview was terminated. (IT. 27-28; TR. 5, 19-20; Ex. 1 at 20:42-21:45).

Defendant filed the instant motion to suppress all statements he made during the December 26, 2020, custodial interview.[2] Defendant asserts he invoked his right to counsel at the outset of the interview when he stated, "If you're doing that, then I might as well get my lawyer," and certainly when he repeatedly stated, "Get me a lawyer" followed by, "You want me to waive my rights and sign my life away . . . get a fucking lawyer." Because the interview continued after he invoked his right to counsel, Defendant argues his subsequent waiver of *Miranda* was invalid. (Filing No. 39 at p. 5-7; TR. 6).

The government asserts Defendant made a knowing and intelligent waiver of his *Miranda* rights when he stated, "I don't need a fucking lawyer." (Filing No. 43 at p. 4). The government does not dispute that Defendant's statements to "Get me a lawyer" and ". . . get a fucking lawyer" were unequivocal invocations of counsel; however, because Defendant reinitiated the conversation after SA Robitaille attempted to terminate the interview, SA Robitaille was permitted to continue the interview and obtain a valid waiver of *Miranda*. (Filing No. 43 at p. 6-7).

---

[2] It is not disputed that Defendant was "in custody" for purposes of *Miranda* during the interview. (TR. 4).

## ANALYSIS

"The general rule is that, if a suspect who is in custody unambiguously invokes the right to counsel, law enforcement must end all questioning until an attorney is present or the suspect reinitiates the discussion." *United States v. Zephier*, 989 F.3d 629, 633 (8th Cir. 2021)(citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)(holding that once a suspect "expresse[s] his desire to deal with the police only through counsel, [the suspect] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the [suspect] himself initiates further communication, exchanges, or conversations with the police.").

The government does not dispute that Defendant's statements to "get a lawyer" and "get a fucking lawyer" were unequivocal invocations of counsel.[3] However, the undersigned magistrate judge agrees with the government that Defendant voluntarily reinitiated the conversation with SA Robitaille after making such invocation. After Defendant stated, "get a fucking lawyer," SA Robitaille replied, "Alright. We'll get the jailers back in here to take you back to your cell. Okay?" thereby attempting to terminate the interview and honor Defendant's request. Defendant then reinitiated the conversation by asking SA Robitaille, "Well, . . . tell me what I'm being charged with, to start with, before I go anywhere." (IT. 8). To his credit, SA Robitaille appeared hesitant to resume the discussion with Defendant and made it clear, "I'm not asking you a question, but I'm just going to answer your question, okay?" (IT. 8). SA Robitaille then answered Defendant's question by listing the state charges against the Defendant, disclosing that Defendant faced additional federal charges, and stating he was hoping to hear Defendant's side of the story. SA Robitaille's reply to Defendant's question was not "interrogation." See, e.g., *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)(finding postal inspector's responses to suspect's questions about the charges against him were routine conversation, not interrogation); *United States v. Head*, 407 F.3d 925, 929 (8th Cir. 2005)(finding officer had "no reason to know that informing [the suspect] that he wanted to 'talk to him about what had occurred that morning' would elicit an incriminating response"). And, Defendant's stated desire to find out the charges against him "before I go

---

[3] Defendant recognizes his first reference to a lawyer ("If you're doing that, then I might as well get my lawyer") and his second reference after receiving a *Miranda* advisement ("Can you get one—get a lawyer here today?") are "arguably ambiguous." (Filing No. 39 at p. 5). The undersigned magistrate judge agrees these requests are equivocal or ambiguous and did not require SA Robitaille to terminate the interview. See *Davis v. United States*, 512 U.S. 452, 452, (1994)(concluding officers were not required to terminate an interview after the defendant stated, "Maybe I should talk to a lawyer"). *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001)(finding the statement, "Could I call my lawyer?" was equivocal).

4

anywhere" "evinced a willingness and a desire for a generalized discussion about the investigation," "was not merely a necessary inquiry arising out of the incidents of the custodial relationship," and "could reasonably have been interpreted" by SA Robitaille "as relating generally to the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). As such, the undersigned magistrate judge finds *Edwards* was not violated. See *Bradshaw*, 462 U.S. at 1045-46 (finding *Edwards* was not violated when suspect reinitiated further conversation after invoking counsel by asking, "Well, what is going to happen to me now?").

The next question is whether Defendant made an intelligent, knowing and voluntary waiver of his rights under *Miranda* considering the totality of the circumstances, "including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." See *Bradshaw*, 462 U.S. at 1046 (quoting *Edwards*, 451 U.S., at 486 n. 9). "[T]his determination depends 'upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979)).

Considering the totality of the circumstances, it is apparent Defendant's waiver of *Miranda* was knowing, intelligent, and voluntary. At the beginning of the interview, SA Robitaille recited to Defendant a full *Miranda* rights advisement, and Defendant responded he understood his rights. SA Robitaille asked Defendant questions intended to confirm that Defendant was of adequate intelligence to knowingly assert or waive his *Miranda* rights. (IT 5; TR 41). Review of the audio-visual recording shows SA Robitaille's tone was conversational, non-threatening, and he made no threats or promises to Defendant to induce his waiver; in fact, SA Robitaille repeatedly told Defendant he did not have to answer any questions and on more than one occasion stopped Defendant from making statements about the charges because Defendant had not waived his rights under *Miranda*. After Defendant stated, "get a fucking lawyer," SA Robitaille said "Alright," did nothing to dissuade Defendant, and told Defendant he would be taken back to his cell. Defendant was the one who halted his removal from the interrogation room to ask SA Robitaille what the charges were "before I go anywhere." SA Robitaille answered Defendant's question—making it clear SA Robitaille was "not asking you a question" and was only "answer[ing] your question." After being advised of the charges, Defendant immediately replied, "Yep. I don't need a fucking lawyer" and signed the waiver on the rights advisement form. Under these circumstances, the undersigned magistrate judge finds Defendant knowingly and voluntarily waived his right to counsel under *Miranda*. See *Bradshaw*, 462 U.S. at 1046 (finding valid waiver of *Miranda* post-

5

invocation of counsel after the defendant reinitiated conversation because "the police made no threats, promises or inducements to talk, that defendant was properly advised of his rights and understood them and that within a short time after requesting an attorney he changed his mind without any impropriety on the part of the police").

After an approximately fifteen-minute interview, Defendant re-asserted his demand for counsel. SA Robitaille immediately ceased questioning and ended the interview—even interrupting Defendant (who continued to make statements about the investigation) to tell him the interview was over and they were going to respect Defendant's request for an attorney. (IT. 27-28). Defendant received a satisfactory warning of his *Miranda* rights, was allowed to assert them unimpeded, re-initiated conversation, and then knowingly and voluntarily waived his *Miranda* rights before making the statements at issue. When Defendant re-invoked his right to counsel, SA Robitaille immediately ended the interview. Accordingly, Defendant's rights under the Fifth Amendment were not violated and the statements he made during the December 26, 2020, interview do not require suppression. Upon consideration,

**IT IS HEREBY RECOMMENDED** to United States District Court Brian C. Buescher that Defendant's Motion to Suppress Statement (Filing No. 38) be denied.

Dated this 2nd day of September, 2021.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.